**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2924
_____

OMEGA CAPITAL MANAGEMENT PARTNERS, LLC,
Appellant

v.

LEONARD SCHRAGE
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 1-20-cv-01735)
District Judge:  Honorable Maryellen Noreika
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 22, 2022

_____

Before: AMBRO, RESTREPO, and FUENTES, *Circuit Judges*.

(Filed:  December 22, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant, Omega Capital Management Partners, LLC ("Omega"), appeals the District Court's order dismissing its Complaint against Appellee, Leonard Schrage ("Schrage"). For the reasons that follow, we respectfully vacate the District Court's judgment and remand for further proceedings.

**I.**

Omega seeks to enforce an alleged agreement granting it the option to obtain the exclusive right to fund between $1-2 million for Schrage's litigation matters (the "Agreement"). The signed Agreement laid out the general outline of the proposed funding structure but contemplated "a final comprehensive integrated funding document which will replace this Agreement in its entirety." App. 36.

Omega later paid a $10,000 deposit in consideration for an addendum to the Agreement (the "Addendum"), which allowed its original 30-day option to instead remain open until "10 business days after all conditions set forth in paragraph 6, below, are met." App. 41. Paragraph 6 allowed Omega to conduct additional due diligence and required Schrage's assistance in that effort. The Addendum stated that if Omega believed that Schrage's cooperation with due diligence was not "forthcoming," Omega could terminate the Addendum and its deposit would be returned. App. 42.

Omega argues that Schrage failed to adequately cooperate with its due diligence obligations, and subsequently sued under the Agreement and Addendum for (1) injunctive and declaratory relief, (2) breach of contract, and (3) specific performance,

2

requiring Schrage to cooperate with the anticipated due diligence. Schrage sought to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), alleging that the Agreement and Addendum were unenforceable "agreements to agree," and alternatively, that even if enforceable, the agreements violate public policy by providing for the illegal sale of a litigation. App. 5–6. The District Court agreed with Schrage that the agreements were void for indefiniteness and dismissed the suit with prejudice. Omega sought reconsideration, which the District Court denied. Omega timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over an order dismissing claims under Federal Rule of Civil Procedure 12(b)(6). *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

## III.

To state a claim for breach of contract under Delaware law,[1] a plaintiff must demonstrate: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

---

[1] The parties agree as to the application of Delaware law to this dispute; pursuant to the Addendum, all disputes under the Agreement shall be governed and construed in accordance with the laws of the State of Delaware.

The District Court interpreted the Agreement and Addendum together[2] and found that Omega failed to show the existence of a contract: the agreements were unenforceable "agreements to agree" because they left certain material and essential provisions subject to future negotiations. App. 7. Specifically, the District Court found that under *Pharmathene, Inc. v. SIGA Techs., Inc.*, Civ. Act. No. 2627-VCP, 2010 WL 4813553, at *7–*8 (Del. Ch. Nov. 23, 2010), a "reasonable negotiator in the position of one asserting the existence of a contract" would not have concluded "that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that the agreement concluded the negotiations." App. 8.

In support of its finding that the agreements were void for indefiniteness, the District Court cited, for example, that the contracts do not specify the amount of funding or the return to be owed thereupon, and the Agreement's acknowledgement that "[t]he Parties are interested in further exploring a funding structure outlined herein" that would "be set out in a final comprehensive integrated funding document which will replace this Agreement in its entirety." App. 8–9.

It is true that, under Delaware's traditional rule, the absence or indefiniteness of material terms rendered an agreement unenforceable. *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 761 (Del. 2022). However, the District Court's decision does not discuss that in 2013 the Delaware Supreme Court recognized for the first time two forms of enforceable preliminary agreements, "Type I" and "Type II" agreements. *SIGA*

---

[2] This was proper and we will proceed in kind. *Comerica Bank v. Glob. Payments Direct*, 2014 WL 3567610, at *7 (Del. Ch. July 21, 2014).

*Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 349 (Del. 2013) (*SIGA I*). Type I

agreements reflect mutual assent to "all the points that require negotiation" but

contemplate memorializing the pact in a more formal document. *Id*. at 349 & n.82.

Meanwhile, with Type II agreements, the parties "agree on certain major terms, but leave

other terms open for future negotiation." *Id*. Type I agreements are fully binding, while

Type II agreements give rise to a binding obligation to negotiate open issues in good

faith. *Id*.

We disagree with the District Court that the parties' failure to agree on the

essential provisions of the ultimate litigation funding agreement renders these preliminary

contracts void for purposes of stating a claim for relief. Rather, we note that, under *SIGA*

*I* and its progeny, the absence of a definitive contract price and contemplation of future

negotiations over a more formalized agreement generally evidence a Type II agreement

and an enforceable duty to negotiate that agreement in good faith.[3] *See*, *e.g.*, *id.* at 351

(finding that memorializing basic terms of transaction and agreement to negotiate in

accordance with those terms supports finding of Type II agreement); *Cox*, 273 A.3d at

761 (upholding as enforceable Type II agreement contract stating open terms like price

---

[3] We further note that Delaware law does not require that a Type II agreement include an express contractual promise to negotiate in good faith. *See Cox*, 273 A.3d at 761 (upholding contract lacking express provision requiring good faith negotiation of a future agreement as enforceable Type II agreement). Nor is pleading breach of the duty to negotiate in good faith a condition precedent to upholding a claim for breach of a Type II agreement. *See, e.g., Greentech Consultancy Co., WLL v. Hilco IP Servs., LLC*, No. N20C-07-052, 2022 WL 1499828, at *6, *12 (Del. Super. Ct. May 11, 2022) (finding existence of Type II agreement despite that claimant originally pled breach of contemplated funding agreement, not breach of duty to negotiate in good faith).

will "be mutually agreed upon between the parties" in a future "definitive" agreement that must identify Sprint as "Preferred Partner" and run for 36 months); *Greentech Consultancy Co., WLL v. Hilco IP Servs., LLC*, No. N20C-07-052, 2022 WL 1499828, at *12 (Del. Super. Ct. May 11, 2022) (holding that agreement elaborating general terms of future agreement and conditions to closing, but recognizing need for "further documentation" to define terms in more detail, is Type II agreement).[4]

## IV.

We will accordingly vacate the District Court's Order dismissing Omega's Complaint with prejudice and remand for analysis of the Agreement and Addendum in comportment with *SIGA I*, particularly whether the Agreement and Addendum together constitute an enforceable Type II preliminary agreement. *SIGA I*, 67 A.3d at 349.

---

[4] Schrage's alternative argument that the Agreement and Addendum are void in violation of Delaware public policy does not alter our conclusion. A finding on remand that these contracts constitute an enforceable Type II agreement would not be tantamount to enforcing an agreement that violates public policy. Litigation funding agreements are not *per se* champertous under Delaware law. *See Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*, No. CV N07C-12-134-JRJ, 2016 WL 937400, at *4–*5 (Del. Super. Ct. Mar. 9, 2016). Here, it does not follow that any final agreement borne of the parties' negotiations would have necessarily violated Delaware public policy.